No. 17,146.

WHITCHURCH *v*. DUNLAP.
(270 P. [2d] 187)

Decided May 3, 1954.

Mr. C. BLAKE HIESTER, Mr. THOMAS M. TIERNEY, for plaintiff in error.

Mr. ALBERT B. LOGAN, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error, as plaintiff, filed a complaint in

the district court of the City and County of Denver on April 8, 1952, alleging that he had paid $350.00 to defendant, plaintiff in error, for his equity in a used truck and assumed and agreed to pay a promissory note to a finance company for an amount due from defendant on said truck; that defendant represented that the truck was in excellent running condition and guaranteed to perform the uses intended by plaintiff; that defendant represented that an amount on the mortgage to the finance company of $124.00, due in October 1951, had been paid; that said truck, or tractor, as plaintiff calls it, was not in excellent running condition as represented by defendant and he was compelled to expend the sum of $616.00 to put it in the condition in which it was represented to be; that defendant had failed to make the payment of $124.00 as the October installment; that defendant failed to transfer a certificate of title until about January 1, 1952, and as a result of such failure, plaintiff was deprived of the use of the tractor for two and one-half months to his damage in the sum of $813.90; and he sought exemplary damage in the sum of $1000.00.

Answer was filed, in which defendant denied all of the material allegations in the complaint. Trial was to the court November 5, 1952, and at the close of plaintiff's case, defendant moved to dismiss, which motion was denied, and at close of all the evidence the court entered judgment against defendant in the sum of $689.00, making no findings of fact or conclusions of law. That judgment is the subject of this review.

Without details, the testimony is substantially as follows: Defendant had been engaged in the transportation business in Denver, and in closing out said business retained several trucks which were for sale and located on a parking lot; plaintiff contacted defendant by long distance telephone and arranged for an appointment to inspect the trucks with a view of purchasing a truck to be used in connection with the hauling of lumber and ties in his sawmill business. Plaintiff brought one Dobbie to

examine the truck and drive it to Colorado Springs for him. The parties met and viewed the truck, which had been standing out in the cold weather, and the motor would not start, likely due to a run-down battery. It was towed into a garage and the engine started and allowed to run for approximately one hour. Plaintiff stated he wanted to start the engine, listen to it, and look at it before purchasing it. Defendant had suggested to plaintiff that for his kind of business he had better buy one of the other larger trucks, since this particular, smaller truck was bought by him in the first place as a used truck and had been used only around Denver in shagging other trucks, and had been driven possibly five hundred miles after some work had been done on the motor. Plaintiff was more interested in the smaller truck here involved, and after he had examined the motor, heard it running, observed no defects and concluded that the motor was in good condition, he purchased defendant's equity by paying $350.00 therefor and assumed the payments to the finance company. Defendant stated that the October 23 payment, or otherwise the current payment, had been made. Plaintiff's driver drove the truck to Colorado Springs, and it seemed in good condition on the trip. Some time later mechanical defects in the motor were noted and apparently the head was cracked, which plaintiff had replaced, and other mechanical work was done on the motor. Plaintiff did not allege that defendant made false and fraudulent representations. It is to be noted that plaintiff's evidence shows that no defect was discovered by him or anyone else until after the truck had been in his possession for an indeterminate period. There is a dispute as to whether defendant stated that the motor had been overhauled at sometime previous to the time of the sale. It is clear that defendant stated that he had had some work done on the motor; that a new compressor was put in, which was guaranteed; and that the truck never had been used out on the highway

for any country hauls. It develops that the question of overhauling the motor is not material, because it is disclosed by the testimony that after whatever work was done on the motor, it was used around Denver for some period of time, and so far as that is concerned, a motor head could crack after the best job of overhauling might have been done on the truck. The crack would likely occur while in use and could have occurred as easily after plaintiff purchased a truck upon thorough investigation of the motor. In sum, about all that plaintiff established by his evidence was that he had purchased a used truck from defendant, who was not in the used-truck business, after he, plaintiff, had examined and inspected the truck, and which, upon such examination, seemed satisfactory; that defects appeared after plaintiff had put the truck to his own use, and while in his possession. He offered no evidence to show any failure on the part of defendant as to any condition whatever. If there was a defect in the motor at the time of the purchase, there is no showing that such defect was known to defendant. The motion for dismissal was on the ground of no showing of liability on the part of defendant. The case was tried on the theory of misrepresentation, without objection.

■ It should be clear that in this jurisdiction, it is the law that where buyer and seller have equal opportunity to inspect an article which is the subject of a sale, and each has equal knowledge of such article, there is no liability on the part of the seller for defects occuring after the sale, in the absence of fraud. Fraud is not shown, neither was it attempted to be shown in this case. The evidence is strikingly clear that plaintiff had other trucks and likely knew more about the mechanics involved than defendant. It also is clear that plaintiff relied upon his own judgment and not entirely upon what he alleged defendant told him; and so far as that is concerned, the evidence discloses nothing that defendant did tell him that would be a misrepresentation in

this case. In fact, contrary to the claim of defendant in error that Whitchurch warranted the truck to be satisfactory and would do the work for which Dunlap wanted it, the record shows that Whitchurch told him that in his opinion, the truck was in good running condition and would serve his purpose, and that he did not urge the sale of this particular truck, which is shown by the following questions propounded to Dunlap, and the answers thereto: "Q. Did you discuss any other trucks other than the one you purchased? A. He had trucks for sale. Q. Did Mr. Whitchurch urge upon you that you purchase this particular truck? A. No. Q. Why didn't you purchase it on his sayso at that time? A. I naturally wanted to know if it would run."

On the question of the unpaid October installment on the mortgage in the sum of $124.00, defendant denied the allegation that he had not paid such installment. Plaintiff alleged that defendant had not paid it and that he, plaintiff, was required to pay it in order to get title to the truck, and he called a witness from the finance company who testified that the payment due on October 23 was not paid by defendant. This witness was not then cross-examined in behalf of defendant as to defendant's later claim and attempt to show that the payment had been made; however, as a part of his defense, defendant testified that when plaintiff called him with reference to the title and told him that the October payment had been made, he said he told plaintiff that he felt that he did not owe it, and did nothing about it, as he felt that his obligation was current as of the date plaintiff took the machine. He then said, when questioned about having any evidence in the way of canceled checks or other instrument showing that he had made the October payment, that he had his truck-payment schedule. When questioned if that constituted a receipt for payments, he said, "I believe it would," but he did not have it at that time to produce in court. He then was asked to make an identification of a check to the finance company for

$928.00 dated November 1, and stated, "These are a schedule of payments on the other joint contracts." "Q. With reference to the check which you identified in the amount of $928.00, would that have anything to do with the truck in question in this case? A. It certainly does. Q. What was it for? A. I will point it out to you. This one is for $535.00; this one due for another truck for $269.00, the truck not in question; this check for $124.00 goes on the truck in question. The total of these checks makes $928.00, the total of these three contracts."

Objection was made to the introduction of the $928.00 check, on the ground it had not been sufficiently identified as being connected with this transaction; on the contrary, the evidence submitted by defendant was, payment had not been made. Counsel for defendant stated that defendant stated that he had "identified these as including payment on the particular truck in question." "The Court: I think not." Then counsel for plaintiff said he objected to the introduction of any of these others, "those that are not connected with this particular truck in this transaction. As a matter of fact he cannot show even any connection with this transaction, as it does not have anything to do with the issues in the case." Counsel stated, "One is for a particular monthly payment." Then plaintiff's counsel objected to all these exhibits as being immaterial."

"The Court: Sustained."

Technically, the trial court was right in refusing to admit the $928.00 check in evidence if it stood alone; however, when connected with other papers and possibly could have been connected with a substantial showing that the finance company had received money which would represent the $124.00 for the October payment, it was error to refuse defendant the right to go into that question, and if defendant's counsel had made such a reasonable showing, the finance company witness could have been called for rebuttal with their records and the matter clearly and definitely determined. One

thing is sure, if it was not paid by defendant, as he claims, he owes that amount, because it was a part of the sales agreement that the payments would be current, and all that were due and owing by him paid at the time of the sale. If it be established that he had paid this $124.00 October payment, then it was undoubtedly a mistake made by the finance company in not giving him the proper credit on this particular truck account. If that be the case, then defendant is not at fault, and plaintiff, being compelled to make the payment, which he did in order to get his title, the error there would be chargeable to the finance company in withholding title through its own mistake. If defendant could not establish payment, then he owes the $124.00; if he paid it, he does not owe it to plaintiff and it is due plaintiff from the finance company by virtue of its mistake, if such is shown. While this question might be the matter of an independent suit by either party against the finance company, it could, no doubt, have been as fully established in this litigation as it could be in an independent action, if defendant had been permitted to go forward with his attempt to establish payment.

Technically, the court found from what evidence was before it however, on conflicting testimony, that defendant had not made the $124.00 October payment, which was a part of its judgment in plaintiff's favor. Having determined that plaintiff is not entitled to recover under his main case for misrepresentation and for the items of expense which he obligated himself for, the things that he wanted done on the automobile, regardless of defendant's rights or interests, we cannot, under the record as it is made before us, justify a reversal and remand with directions to fully try the issue as to the $124.00 payment; therefore the judgment is reversed in part and affirmed in part and the cause remanded with directions to vacate the judgment as entered, and enter a judgment in plaintiff's favor of $124.00.

Mr. Justice Alter and Mr. Justice Moore concur in the result.

Mr. Chief Justice Stone not participating.